STEPHEN J. CASEY, Admr., *vs.* JAMES T. LOCKWOOD, Admr.

PROVIDENCE—MARCH 31, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Trusts. " Legal Representatives."*

A fund was left in trust by the terms of which the trustee was required to pay over the principal in his hands, upon the death of A., to A.'s "legal representatives : "—

*Held*, that the meaning of the term depended upon the manner of its use.

*Held*, further, that in the case at bar it meant those who represented the estate in the sense of distributees ; that is, the widow and children.

(2) *Masters in Chancery. Exceptions. Trusts. Equity.*

The cause having been referred to a master to ascertain the fund in the hands of the trustee for distribution, the master, at the request of the respondent, reported to the court the facts in regard to certain payments which he found had been made by the trustee but not under the trust. No exceptions were taken to the report :—

*Held*, that the facts were before the court not as exceptions to the report of the master but as affecting the order of distribution, and hence would be considered by the court.

*Held*, further, that, as the distributees had had the benefit of the payments made by the trustee, upon the principle that those who seek equity must do equity his estate would be allowed for them, although the mode of payment was irregular.

BILL IN EQUITY for an accounting with a trust estate. Heard on report of master.

STINESS, C. J.   The respondent is administrator of the estate of John E. Sherman, who was the trustee of the fund set forth in the bill.   As such trustee, Sherman was required to pay over the principal, remaining in his hands upon the death of Joseph F. Allen, to said Allen's "legal representatives."

The term is broad enough to include the administrator of Joseph F. Allen, and also those who are entitled to distribution of his estate.   Bouvier's Law Dict. tit. *Legal Representatives*, and cases cited.

The meaning of the term depends upon the manner of its use.

In this case we think it means those who represent his estate, in the sense of the distributees ; that is, his widow and children.   *Schultz* v. *Citizens Ins. Co.*, 59 Minn. 308; *Hodge's Appeal*, 8 W. N. C. Pa. 209.

These, however, have had the benefit of the money paid out by Sherman : the widow and children, in the funeral expenses and gravestone of the husband and father ; the children, in the taxes, insurance, and repairs of the estate owned by them ; and Harriet T. Collins, to the extent of her share, in money paid out for her benefit.

While there was no legal liability on their part to pay the funeral expenses, it was a natural duty ; and, as we understand from the report of the master, Sherman acted as the agent of the family in attending to these matters.

We think that his estate should be allowed for them.   The complainant claims that this cannot be done, because no exceptions have been taken.   It is not claimed that there is any error in the master's finding that the payments were not made under the trust.   Consequently, the trustee must be charged with the fund in his hands ; but the order to distribute to the beneficiaries is a distinct matter.   The master, at the request of the respondent, has reported to the court the facts about the payments, evidently with a view to our pas-

sing upon them, since otherwise the report would have no meaning.

They come before us, not as exceptions to the charging of the fund, but as facts affecting the order of distribution, and presented in this way for that purpose.    This is different from *Teoli* v. *Nardolillo*, 23 R. I. 87.    The proceeding is unusual, but in view of the peculiarities of this case we do not regard it as erroneous.    The facts thus brought to our attention are pertinent.    Those who seek equity must do equity.    It would be far from the office of a suit in equity to compel a second payment of money, from which the complainants have already had the benefit, simply because the mode of payment has been irregular, but not dishonest.

Accordingly we think that the administrator of Sherman's estate should be allowed to retain, for funeral expenses, $105 ; repairs, taxes, etc., $82.74 ; gravestone, $47 ; and that he should pay over the balance, $122.96, to be distributed as set forth in the decree proposed by the complainants ; with the further retention, however, of the share of Harriet T. Collins, on account of the money expended for her personal benefit.

A decree may be entered accordingly.

*Doran & Flanagan and P. Henry Quinn*, for complainants.
*Cooke & Angell*, for respondent.